FILED

2022 Sep-28  PM 02:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | |
|---|---|
| **LESLIE CRAIG CARROLL,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| ) | |
| **COMMISSIONER, SOCIAL** ) | **Case No.: 4:21-cv-964-AMM** |
| **SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>MEMORANDUM OF DECISION</u>

Plaintiff Leslie Craig Carroll brings this action pursuant to the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Based on the court's review of the record, the court **AFFIRMS** the decision of the Commissioner.

## I.    Introduction

On September 6, 2019, Mr. Carroll filed an application for supplemental security income under Title XVI of the Act, alleging disability beginning July 15, 2019. R. 61, 100–11, 192–97. Mr. Carroll alleges disability due to pain in his lower and middle back, running out of breath, arthritis, gout, and knee pain. R. 100. He has at least a high school education and no past relevant work experience. R. 68–69.

1

The Social Security Administration ("SSA") initially denied Mr. Carroll's application on February 27, 2020, and again denied it upon reconsideration on July 15, 2020. R. 61, 100–25. On August 3, 2020, Mr. Carroll filed a request for a hearing before an Administrative Law Judge ("ALJ"). R. 61, 142. That request was granted. R. 143–45. Mr. Carroll received a telephone hearing before ALJ Emilie Kraft on November 19, 2020. R. 61, 75–98. On January 27, 2021, ALJ Kraft issued a decision, finding that Mr. Carroll was not disabled from September 6, 2019 through the date of the decision. R. 58–70. Mr. Carroll was forty-seven years old at the time of the ALJ decision. R. 68, 70.

Mr. Carroll appealed to the Appeals Council, which denied his request for review on June 28, 2021. R. 1–3. After the Appeals Council denied Mr. Carroll's request for review, R. 1–3, the ALJ's decision became the final decision of the Commissioner and subject to district court review. On July 15, 2021, Mr. Carroll sought this court's review of the ALJ's decision. *See* Doc. 1.

## II.    The ALJ's Decision

The Act establishes a five-step test for the ALJ to determine disability. 20 C.F.R. § 416.920. *First*, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. § 416.972(a). "Gainful work activity" is work that is done for pay or profit.

2

20 C.F.R. § 416.972(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 416.920(b). *Second*, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 416.920(a)(4)(ii), (c). Absent such impairment, the claimant may not claim disability. *Id*. *Third*, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 416.920(d), 416.925, 416.926. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ still may find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity, which refers to the claimant's ability to work despite his impairments. 20 C.F.R. §§ 416.920(e), 416.945. In the *fourth* step, the ALJ determines whether the claimant has the residual functional capacity to perform past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the ALJ determines that the claimant is capable of performing past relevant work, then the claimant is deemed not disabled. *Id*. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the *fifth* and final step. 20 C.F.R. § 416.920(a)(4)(v). In this step, the

ALJ must determine whether the claimant is able to perform any other work commensurate with his residual functional capacity, age, education, and work experience. 20 C.F.R. § 416.920(g)(1). Here, the burden of proof shifts from the claimant to the Commissioner to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his residual functional capacity, age, education, and work experience. 20 C.F.R. §§ 416.920(g)(1), 416.960(c).

The ALJ found that Mr. Carroll had not engaged in substantial gainful activity since his application date. R. 63. The ALJ decided that Mr. Carroll had the following severe impairments: chronic obstructive pulmonary disorder ("COPD"); morbid obesity; severe sleep apnea; and minor degenerative joint disease in the right knee. R. 63. Overall, the ALJ determined that Mr. Carroll did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" to support a finding of disability. R. 64.

The ALJ found that Mr. Carroll had the "residual functional capacity to perform sedentary work" with certain limitations. R. 64. The ALJ determined that Mr. Carroll may: occasionally climb ramps and stairs; occasionally balance; occasionally stoop, kneel, crouch, and crawl; and occasionally be exposed to extreme cold and humidity. R. 64. The ALJ also determined that Mr. Carroll must

4

never: climb ladders, ropes, or scaffolds; or be exposed to unprotected heights or hazardous machinery. R. 64.

According to the ALJ, Mr. Carroll "has no past relevant work." R. 68. According to the ALJ, Mr. Carroll was a "younger individual" on the date the application was filed, and he has "at least a high school education," as those terms are defined by the regulations. R. 68–69. The ALJ determined that "[t]ransferability of job skills is not an issue because [Mr. Carroll] does not have past relevant work." R. 69. Because Mr. Carroll's "ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations," the ALJ enlisted a vocational expert to ascertain "the extent to which these limitations erode the unskilled sedentary occupational base." R. 69. That expert testified that such individual "would be able to perform the requirements of representative occupations such as an order clerk. . . ; a charge account clerk . . . ; and a document preparer." R. 69.

Based on these findings, the ALJ concluded that Mr. Carroll had not been under a disability, as defined in the Act, since September 6, 2019. R. 61, 70. Mr. Carroll now challenges that decision.

## III. Factual Record

The medical records in Mr. Carroll's file span many years. However, the court will focus on the medical records beginning on the date of alleged disability, here

July 15, 2019, that relate to the symptoms Mr. Carroll alleges cause his disability. *See* 20 C.F.R. 416.912(b) (discussing complete medical history).

The medical records reflect a history of back and joint pain. *See* R. 302 (noting "chronic back pain worse with sitting for a prolonged period" on June 22, 2012); R. 305 (noting "chronic arthritic pain in his neck, back and knees" on June 21, 2012); R. 377 (noting "arthritis" in the knee in 2012); R. 389 (noting "sharp" back pain on January 12, 2012). In 2012, Mr. Carroll's right knee was treated with injections and physical therapy. R. 321–22. Mr. Carroll complained of shortness of breath as early as 2012. R. 371. Mr. Carroll's records reflect a history of sleep apnea beginning in 2018. R. 484.

Mr. Carroll's primary care physician, Dr. Wendy Gomez, began treating him in 2012. *See* R. 388. Mr. Carroll presented to Dr. Gomez on March 10, 2017 complaining of back pain that began three days prior. R. 407. The pain was located in his low back and "radiate[d] to [the] right flank, right groin and right thigh," "sharp," and "worsening." R. 407. A physical exam performed that day revealed normal strength, tone, gait, and station. R. 408. Dr. Gomez stated in a July 24, 2018 letter: "Mr. Leslie Craig Carroll . . . is a patient of mine and has been since 1/12/2012. Mr. Carroll has chronic medical conditions that limit his physical abilities. Due to thEse conditions, he is unlikely to maintain employment." R. 276. Mr. Carroll

presented to Dr. Gomez on December 1, 2018 with "injury related" back pain that began after he picked up a tricycle. R. 402.

Mr. Carroll presented to Southern Immediate Care on August 29, 2019 complaining of a hurt back. R. 437. While he reported chronic pain for twenty years, he also reported acute pain after hearing a pop. R. 437. The examination revealed no weakness, no joint contractures, no joint swelling, and tenderness in the lumbar paraspinal area. R. 438. Mr. Carroll was ambulating with a cane and reported difficulty walking. R. 437–38. He was diagnosed with: "Strain of lumbar paraspinous muscle, initial encounter" and "Midline low back pain without sciatica, unspecified chronicity." R. 437. His treatment plan included medications (Cyclobenzaprine and Medrol), therapeutic injections, warm moist heat, Biofreeze, and to return if symptoms did not improve. R. 437.

Mr. Carroll underwent a disability determination examination on December 11, 2019. R. 445. He reported back pain for twenty years, shortness of breath for a few years, and "ongoing problems with leg pain." R. 442, 445. He reported that injections for his leg pain were "ineffective." R. 442. The examination revealed that Mr. Carroll "ambulate[d] independently without an assistive device." R. 443.

Knee imaging performed on January 20, 2020 revealed "Adipose changes and minor DJD. No additional focal or acute pathology otherwise." R. 454.

Mr. Carroll underwent a pulmonary function analysis on January 21, 2020. R. 457. Mr. Carroll presented to the Gadsden Regional Medical Center on February 8, 2020 with shortness of breath. R. 471. The visit records document his history of COPD and show that at the time of the visit he had no tenderness in his back, a normal range of motion, and no swelling. R. 471, 473.

Mr. Carroll presented to the Gadsden Family Practice on March 19, 2020 complaining of wheezing, coughing, and shortness of breath. R. 488. At the visit, Mr. Carroll was ambulating normally but reported muscle aches and weakness, joint pain, back pain, and swelling. R. 491, 494. His exam revealed normal strength and tone, no tenderness, and normal movement of all extremities. R. 494.

Mr. Carroll presented to the Gadsden Regional Medical Center on May 2, 2020 with shortness of breath. R. 467. He underwent a chest X-Ray which found: "Heart size is within normal limits. The lungs are clear." R. 465. The visit records document his history of COPD, and show that at the time of the visit he had normal range of motion and normal strength. R. 469.

Mr. Carroll presented to American Family Care on July 2, 2020 complaining of middle to low back pain for three days. R. 508. He was noted to have tenderness to his back with palpation and limited range of motion secondary to the pain and was prescribed Medrol and given therapeutic injections. R. 508–09, 519. He was also referred to Etowah Pulmonology for his COPD. R. 518.

Mr. Carroll presented to Southern Immediate Care on July 16, 2020 for lower back pain and other chronic pain. R. 554. He was prescribed refills of Cyclobenzaprine and Medrol and referred to orthopedic surgery. R. 554. He was also treated with therapeutic injections. R. 554. Mr. Carroll's back pain was described as "acute on chronic": he has had chronic back pain for twenty years, and "[h]as frequent 'flares' [including a] current episode [that] has been going on for 2–3 days." R. 554. His musculoskeletal exam showed: no weakness, no joint contractures, no joint swelling, mild tenderness with palpation of the lumbar paraspinal region, and ambulating unassisted. R. 555.

Mr. Carroll presented to Dr. Daniel Ryan at Northeast Orthopedics on August 27, 2020 complaining of low back pain and bilateral leg pain. R. 543. Mr. Carroll reported that "[h]e has a long history of worsening back pain that used to be intermittent, now it's constant; it's exacerbated by any activity or upright posture. He says it really keeps him from being able to do anything." R. 544. Mr. Carroll reported being treated with steroid dose packs and muscle relaxers, which "helped some," and being unable to tolerate anti-inflammatories due to GI issues. R. 544. Mr. Carroll told Dr. Ryan that he "did not want any pain medication because he used to have problems with those and wants to stay away from that." R. 544. Dr. Ryan documented a positive single leg raise bilaterally, and Mr. Carroll complained of significant back pain when changing positions. R. 544. Mr. Carroll had normal

posture, and a slow and cautious gait. R. 544. Dr. Ryan was unable to get a sufficient X-Ray of Mr. Carroll's lumbar spine due to his body size. R. 544. Dr. Ryan noted that he was unable to diagnose Mr. Carroll, even with a diagnosis was unable to perform surgery, and was unable to brace him. R. 544.

Mr. Carroll presented to Etowah Pulmonology Associates on August 3, 2020 after a referral for asthma/COPD. R. 571, 573. At the visit, he reported wheezing and shortness of breath, muscle cramps, joint pain, back pain, swelling in the extremities, and difficulty walking. R. 574. The physical exam showed that he was ambulating normally, with normal muscle strength and muscle tone, normal gait and station, and normal movement of all extremities. R. 574. He was diagnosed with obstructive sleep apnea syndrome. R. 575.

Mr. Carroll underwent a sleep study on September 2, 2020. R. 581. The sleep study "demonstrated severe obstructive sleep apnea, which resulted in sleep fragmentation and hypoxemia." R. 581. Mr. Carroll presented to Etowah Pulmonology Associates to follow up on a sleep study on September 3, 2020. R. 567. Mr. Carroll reported no muscle aches, weakness, or cramps; no joint pain; no back pain; no swelling in the extremities; and no difficulty walking. R. 569. He was ambulating normally and exhibited normal tone and motor strength, normal movement of all extremities, and normal gait and station. R. 570. Mr. Carroll was prescribed a CPAP machine. R. 571.

10

Mr. Carroll presented to Southern Immediate Care on September 7, 2020 to follow up for his chronic conditions of GERD, morbid obesity, hypertension, and gout. R. 561. He presented with normal gait and denied joint pain, back pain, and joint swelling. R. 561–62.

Mr. Carroll underwent a pulmonary function test on September 29, 2020, which showed: "Normal spirometry[]" and "DLCO is reduced likely due to obesity. Clinical correlation is advised." R. 576.

Mr. Carroll presented to Etowah Pulmonology Associates on October 26, 2020 for a two-month follow-up appointment. R. 591. He reported needing, using, and benefiting from his CPAP machine. R. 592. He also reported cough and shortness of breath, no muscle aches, weakness, or cramps; no joint pain; no back pain; no swelling in the extremities; and no difficulty walking. R. 593. He was ambulating normally, with normal tone and muscle strength, normal movement of all extremities, and normal gait and station. R. 593. Mr. Carroll underwent an echocardiogram on October 29, 2020. R. 600.

## IV.   Standard of Review

This court's role in reviewing claims brought under the Act is a narrow one. The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. §§ 405(g), 1383(c)(3); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal

standards were applied, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The Act mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). This court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the record as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Martin*, 894 F.2d at 1529 (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). If the Commissioner's factual findings are supported by substantial evidence, they must be affirmed even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. No decision is automatic, for "[d]espite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Failure to

12

apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## V.    Discussion

Mr. Carroll alleges that the ALJ's decision should be reversed because (1) "The ALJ failed to give [Mr. Carroll's] obesity proper consideration pursuant to SSR 19-2p[;]" (2) "The ALJ failed to accord proper weight to the Treating Physician, Dr. Wendy Gomez . . . , and failed to show good cause therefore[;]" and (3) the ALJ's decision was not based on substantial evidence because she "relied on Vocational Expert testimony that was not based on a correct or full statement of [Mr. Carroll's] limitations and impairments." Doc. 8 at 1, 23–24.

### A.  Consideration of Obesity Pursuant to SSR 19-2p

Applicable regulations provide that the ALJ must "consider all evidence from all sources" and assess the claimant's residual functional capacity to "show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment." SSR 19-2p, 2019 WL 2374244, at *3–*4 (May 19, 2019). The SSA has stated that "[i]n cases involving obesity, fatigue may affect the person's physical and mental ability to sustain work activity. This may be particularly true in cases involving obesity and sleep apnea." *Id.* at *4.

In her decision, the ALJ determined Mr. Carroll's obesity was a severe impairment. R. 63. In her discussion of residual functional capacity, the ALJ

specifically mentioned Mr. Carroll's weight ("500+ pounds") and his inability to "get imaging of his back due to his weight." R. 65. She also discussed his testimony regarding his weight, including that "he has been advised to lose weight, but it is hard since he has difficulty moving around." R. 65. The ALJ discussed medical records noting the inability to "get imaging of his back due to his body mass," that imaging "was not clear due to his size," that a treating physician "was unable to effectively brace him due to his size," and that the at the consultative physical examination "[t]hey were unable to test his knees due to his size." R. 66. The ALJ also noted that Mr. Carroll's "Diffusing Capacity of the Lung for Carbon Monoxide (lung functioning) was reduced, but likely due to obesity." R. 66. Next, the ALJ specifically discussed Mr. Carroll's obesity and the application of SSR 19-2p. R. 67. The ALJ stated:

> The claimant is also significantly obese. Weight loss has been recommended on several occasions, but the claimant continues to gain weight. At the hearing, he testified that he weighed 500+ pounds. His doctors have mentioned his weight in the treatment notes. The claimant's obesity was considered in terms of its possible effects on the claimant's ability to perform work and daily activities. Social Security Ruling 19-2p (replaces and rescinds 02-01p) states that the combined effects of obesity, with other impairments, may be greater than might be expected without obesity, and that someone with obesity, combined with their other physical impairments, may have more pain and limitation than they may have from their physical impairments alone. Social Security Ruling 19-2p (replaces and rescinds 02-01p) states that, in cases involving obesity, fatigue may affect the individual's physical and

mental ability to sustain work activity, which may be particularly true in cases involving obstructive sleep apnea, which the claimant also has. The undersigned is required to consider obesity in determining whether a claimant has medically determinable impairments that are severe, whether those impairments meet or equal any listing, and when determining the claimant's residual functional capacity. Social Security Ruling 19-2p (replaces and rescinds 02-01p) also states obesity is considered severe when alone, or in combination with another medically determinable physical or mental impairments, significantly limits an individual's physical or mental ability to do basic work activities. However, the undersigned will not make assumptions about the severity or functional effects of obesity combined with other impairments. While obesity may or may not increase the severity or functional limitations of other impairments, each case will be evaluated solely on the information in the case record. In the present case, the claimant's obesity does not prevent ambulation, reaching, or orthop[]edic and postural maneuvers. However, the obesity, in combination with the other impairments warrants a reduction to sedentary work, with further appropriate work restrictions. However, these restrictions do not impair the claimant to the point where the claimant is unable to perform any competitive work or that the claimant meets or equals the criteria of any disability listing. The claimant's other impairments, even in conjunction with the obesity, cannot be considered to cause disability as defined by the Social Security Administration (20 CFR 416.922).

R. 67.

Mr. Carroll argues that the ALJ failed to properly consider his obesity, but substantial evidence supports the ALJ's application of SSR 19-2p. As noted above, the ALJ specifically cited SSR 19-2p in explaining how to consider the how Mr. Carroll's obesity affects his ability to perform work and daily activities. R. 67. The

ALJ also specifically stated Mr. Carroll's obstructive sleep apnea may lead to additional fatigue potentially affecting an individual's physical and mental ability to sustain work activity. R. 67. Additionally, the ALJ recognized that Mr. Carroll exhibits limitations due to his obesity in combination with his other impairments, and thus, she limited him to sedentary work, with further limitations. R. 67. The ALJ precluded Mr. Carroll from climbing ladders, ropes, and scaffolds and being exposed to unprotected heights or hazardous machinery. R. 64. Additionally, she limited Mr. Carroll to only occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, crawling, and being exposed to extreme cold and humidity. R. 64. In making this determination, the ALJ specifically stated that sedentary work was appropriate because "heavy lifting and carrying and prolonged standing and walking may . . .  prove difficult due to his extreme obesity." R.68.

As noted by the ALJ, the medical records shows that Mr. Carroll's obesity does not prevent ambulation, reaching, or orthopedic and postural moves. R. 67. Mr. Carroll failed to establish that his obesity imposed limitations beyond those included in the residual functional capacity, nor did he identify medical records supporting limitations beyond those included in the residual functional capacity. Thus, the ALJ's assessment of Mr. Carroll's was proper under SSR 19-2p, and substantial evidence supports the ALJ's residual functional capacity determination.

### B. Opinion of Dr. Wendy Gomez

16

The SSA has revised the applicable regulations related to medical opinion evidence. Historically, the treating source rule provided that a treating physician's opinion was entitled to substantial weight unless good cause is shown to the contrary. *See* 82 Fed. Reg. 5844-01 at 5853 (Jan. 18, 2017); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986) (explaining the treating source rule). The SSA formalized the treating source rule in 1991 when it implemented regulations that required ALJs to "give more weight to opinions" from treating sources and to "give good reasons . . . for the weight . . . give[n] [a] treating source's medical opinion." 20 C.F.R. § 416.927(c)(2).

The SSA's new regulations, promulgated in 2017, do away with the hierarchy of medical opinions and the treating source rule. *Id.* at § 416.920c(a). Under the new regulations, an ALJ need not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" for all claims filed on or after March 27, 2017. *Id.* And the ALJ "will articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions . . . in [the claimant's] case record." *Id.* at § 416.920c(b).

When evaluating the persuasiveness of the opinions, the ALJ considers these factors: (1) supportability, i.e., how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)"; (2) consistency with the evidence; (3) relationship with the

claimant, including the nature of the relationship, the length of the treatment relationship, the frequency of examinations, and the extent of the treatment relationship; (4) specialization; and (5) "[o]ther factors," such as the medical source's familiarity with the agency's policies and the evidence in the claim. *Id.* at § 416.920c(c). Supportability and consistency are the most important of the five factors, and an ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions . . . in [her] . . . decision." *Id.* at § 416.920c(b)(2). The ALJ may explain how she considered the remaining factors, but she is not required to do so. *Id.*

The court will apply the 2017 regulations. Mr. Carroll concedes that he applied for supplemental security income after March 27, 2017. Doc. 8 at 1. Mr. Carroll argues that the "'treating physician rule' has been abolished by Regulation but remains in effect by Eleventh Circuit precedent." Doc. 8 at 22. But, the Eleventh Circuit has applied the new regulations and held that "the Commissioner eliminated the treating-physician rule" and the new regulations "abrogate[] our earlier precedents applying the treating-physician rule." *Harner v. Comm'r*, 38 F.4th 892, 896–97 (11th Cir. 2022). *See also Matos v. Comm'r*, No. 21-11764, 2022 WL 97144, at *4 (11th Cir. Jan. 10, 2022) (stating that the "new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's

opinion"); *Glasby v. Comm'r*, No. 21-12093, 2022 WL 1214015, at *3 (11th Cir. Apr. 25, 2022) (finding the agency did not err when applying the new regulations to the opinion of the claimant's treating physician); *Jones v. Comm'r*, No. 22-10507, 2022 WL 3448090, at *1 (11th Cir. Aug. 17, 2022) ("Under the new regulation, an ALJ is to give a treating physician's opinions no deference and instead must weigh medical opinions based on their persuasiveness."). Accordingly, the court will apply the 2017 regulations – not the treating source rule – to the ALJ's evaluation of the opinion evidence.

SSA regulations also provide that "[s]tatements on issues reserved to the Commissioner[]" are "neither valuable nor persuasive to the issue of whether [a claimant is] disabled" and the SSA "will not provide any analysis about how we considered such evidence in [the] determination or decision." 20 C.F.R. § 416.920b(c)(3). Statements on issue reserved to the Commissioner include: (i) Statements that a claimant is or is not disabled, blind, able to work, or able to perform regular or continuing work; (ii) Statements about whether or not a claimant has a severe impairment(s); (iii) Statements about whether or not a claimant's impairment(s) meets the duration requirement of the SSA; (iv) Statements about whether or not a claimant's impairment(s) meets or medically equals any listing; (v) Statements about what a claimant's residual functional capacity is using the agency's programmatic terms about the functional exertional levels instead of descriptions

about the claimant's functional abilities and limitations; (vi) Statements about whether or not a claimant's residual functional capacity prevents her from doing past relevant work; (vii) Statements that a claimant does or does not meet the requirements of medical-vocational rule; and (viii) Statements about whether or not a claimant's disability continues or ends when the agency conducts a continuing disability review. *Id.*

In contrast, under the regulations, "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [his] impairment(s) and whether [he] has one or more impairment-related limitations or restrictions" in listed abilities, including the "ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. § 416.913(a)(2)(i).

At issue is a July 24, 2018 letter by Dr. Wendy Gomez, Mr. Carroll's treating physician. Doc. 8 at 17; *see also* Doc. 10 at 2. Dr. Gomez's letter states:

> To Whom It May Concern:
>
> Mr. Leslie Craig Carroll (D.O.B. 04/03/1973) is a patient of mine and has been since 1/12/2012.
>
> Mr. Carroll has chronic medical conditions that limit his physical abilities. Due to these conditions, he is unlikely to maintain employment.

> Please let me know if any additional information is
> needed.

R. 276.

The ALJ considered Dr. Gomez's letter and discussed it in her residual

functional capacity findings as follows:

> In a letter dated July 24, 2018, Wendy Gomez, M.D.
> opined the claimant was "unlikely to maintain
> employment" due to chronic medical conditions that limit
> his physical abilities. The decision regarding disability is
> reserved to the Commissioner based on all the evidence
> (20 CFR 416.927(d)). Under our rules, the undersigned did
> not provide articulation about the evidence that is [n]either
> inherently valuable or persuasive to the issue of whether
> the claimant is disabled in accordance with 20 CFR
> 416.920b.

R. 67. The ALJ also stated:

> The administrative record may contain . . . statements on
> issues reserved to the Commissioner, such as Dr. Gomez's
> opinion in Exhibit 15E. Consistent with current rules and
> regulations, the undersigned did not provide articulation
> about evidence that is inherently neither valuable nor
> persuasive in accordance with 20 CFR 416.920b(c). The
> undersigned addressed important specific considerations
> where necessary.

R. 68.

Mr. Carroll argues that the ALJ failed to accord proper weight to Dr. Gomez's

letter and failed to show good cause. Doc. 8 at 16–23; Doc. 10 at 2–10. Mr. Carroll

also argues that "[t]he opinion of Dr. Gomez combined with the treatment records

of Dr. Gomez Sand Mountain Internal Med . . . is not an opinion reserved for the

Commissioner." Doc. 8 at 17. The Commissioner argues that "under the Commissioner's new rules, the ALJ did not need 'good cause' to reject Dr. Gomez's statement of disability, nor was she required to explain her treatment of the statement in the decision." Doc. 9 at 18.

*First*, as noted above, to the extent that Mr. Carroll's argument is based on the treating source rule, that argument fails because the applicable regulations no longer employ that rule. *Harner v. Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022); *see* 20 C.F.R. § 416.920c. Further, Mr. Carroll has not made an argument under the new regulations as it relates to the ALJ's discussion of Dr. Gomez's letter, nor has Mr. Carroll identified functional limitations from Dr. Gomez's letter that indicate greater residual functional capacity limitations than those included by the ALJ.

*Second*, because Dr. Gomez's letter contained statements on issues reserved for the Commissioner, the ALJ properly refrained from providing analysis on how they impacted her decision. The letter specifically opined that "Mr. Carroll has chronic medical conditions that limit his physical abilities. Due to these conditions, he is unlikely to maintain employment." R. 276. The ALJ did not err in her treatment of these statements and correctly considered Dr. Gomez's letter under the applicable regulations.

### C. Vocational Expert Testimony

"In order for a Vocational Expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002). The hypothetical question posed by the ALJ need not include impairments that the ALJ has properly determined to be unsupported by the evidentiary record. *Crawford v. Comm'r*, 363 F.3d 1155, 1161 (11th Cir. 2004).

After considering the "entire record," the ALJ found that Mr. Carroll has:

> the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he can occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance; occasionally stoop, kneel, crouch, and crawl; have occasional exposure to extreme cold and humidity; and have no exposure to unprotected or hazardous machinery.

R. 64. At the administrative hearing, the ALJ posed a hypothetical question and a series of follow-up questions to the vocational expert. R. 94–96. The ALJ's hypothetical question incorporated the residual functional capacity that she crafted after her review of the record:

> Q: Please assume a hypothetical individual of the same age and education as the claimant with no past relevant work. Further, assume that individual would be limited to sedentary work as that term is defined in the Regulations with the following additional limitations. The individual could occasionally climb ramps and stairs. Never climb ladders, ropes, or scaffolds. Could occasionally . . . balance, . . . as well as stoop, kneel, crouch, and crawl. Could have occasional exposure to extreme cold and humidity, and no exposure to unprotected heights or

> hazardous machinery. Could that hypothetical individual perform any work in the national economy?
>
> A: Your Honor, considering those limitations there would be examples. One example is an order clerk. DOT code 209.567-014, a sedentary job with an SVP of 2. In the United States, an estimated 19,000. The second example is a charge account clerk. DOT code 205.367-014, a sedentary job with an SVP of 2. In the United States an estimated 34,000. A third example is a document preparer. DOT code 249.587-018, a sedentary job with an SVP of 2. In the United States an estimated 92,000.

R. 94–95. The ALJ continued by asking additional follow-up questions concerning "customary tolerances." R. 95–96. First, the ALJ asked if the "jobs [could] be performed if an individual required an assistive device, such as a cane or walking stick for all ambulation." R. 95. The vocational expert answered that "the cited jobs would remain, considering that additional limitation." R. 95. Second, the ALJ asked what "the customary tolerances [are] for absences." R. 95. The vocational expert answered that "an individual can be absent one day a month and still maintain competitive work," but "[a]nything in excess of one day a month on a regular basis would eliminate competitive work." R. 95. Third, the ALJ asked what "the customary tolerances [are] for off-task behavior." R. 95. The vocational expert answered that "an individual can be off task up to and including ten percent of the time and still maintain competitive work," but "[a]nything in excess of that on a regular basis would eliminate all competitive employment." R. 95–96.

24

Contrary to Mr. Carroll's assertion that "[t]he ALJ . . . relied on Vocational Expert testimony that was not based on a correct or full statement of claimant's limitations and impairments[,]" Doc. 8 at 23–24, the ALJ included all of the limitations in Mr. Carroll's residual functional capacity in the first hypothetical she posed to the vocational expert. Therefore, the vocational expert's testimony was based on a proper statement by the ALJ and constitutes substantial evidence supporting the ALJ's decision.

As for Mr. Carroll's claim that his obesity and pain impairments would cause additional limitations, that argument fails. The ALJ fully considered the effects of Mr. Carroll's obesity and his subjective complaints of pain in the residual functional capacity determination. *See* R. 65, 67–68. The ALJ crafted a residual functional capacity based on the entire record and posed a hypothetical question to the vocational expert based on that residual functional capacity. Thus, the ALJ did not err in determining that jobs existed in the national economy that Mr. Carroll could perform.

## VI.   Conclusion

Upon review of the administrative record, the court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** and **ORDERED** this 28th day of September, 2022.

**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE